# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Maureen Cassidy

**DEFENDANTS**

Pond Lehocky Giordano, LLP
Pond Lehocky, LLP

**(b)** County of Residence of First Listed Plaintiff    Philadelphia County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Philadelphia County
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Daniel S. Orlow, Esq., Console Mattiacci Law,
1525 Locust Street, 9th Fl., Philadelphia, PA 19102

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [x] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [x] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [x] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation |
| | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | **LABOR** | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 710 Fair Labor Standards Act | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | [ ] 720 Labor/Management Relations | | [ ] 485 Telephone Consumer Protection Act |
| [ ] 190 Other Contract | [ ] 362 Personal Injury - Medical Malpractice | [ ] 385 Property Damage Product Liability | [ ] 740 Railway Labor Act | **SOCIAL SECURITY** | [ ] 490 Cable/Sat TV |
| [ ] 195 Contract Product Liability | | | [ ] 751 Family and Medical Leave Act | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 196 Franchise | | | [ ] 790 Other Labor Litigation | [ ] 862 Black Lung (923) | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 791 Employee Retirement Income Security Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | | [ ] 864 SSID Title XVI | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | [ ] 865 RSI (405(g)) | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [x] 442 Employment | [ ] 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | [ ] 896 Arbitration |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 950 Constitutionality of State Statutes |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | | |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. § 2000(e) et seq.; 29 U.S.C. § 206(d), et seq.

Brief description of cause:
Plaintiff was discriminated against because of her sex.

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
in excess of $75,000

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   [x] Yes   [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____ DOCKET NUMBER _____

DATE
3/22/2022

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| Maureen Cassidy | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| Pond Lehocky Giordano, LLP, et al. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants.  (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
and Human Services denying plaintiff Social Security Benefits.                            ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
exposure to asbestos.                                                                      ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
commonly referred to as complex and that need special or intense management by
the court.  (See reverse side of this form for a detailed explanation of special
management cases.)                                                                          ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.        ( X )

| | | |
|---|---|---|
| 3/22/2022 | | Plaintiff, Maureen Cassidy |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-545-7676 | 215-405-2900 | orlow@consolelaw.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

**(Civ. 660) 10/02**

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## DESIGNATION FORM

*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ Philadelphia, PA _____

Address of Defendant: _____ 2005 Market Street, Philadelphia, PA 19103 _____

Place of Accident, Incident or Transaction: _____ 2005 Market Street, Philadelphia, PA 19103 _____

---

**RELATED CASE, IF ANY:**

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
   Yes ☐   No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
   Yes ☐   No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?
   Yes ☐   No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
   Yes ☐   No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not   related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 03/22/2022 _____ _____ 311702
_____ *Attorney-at-Law / Pro Se Plaintiff* _____ *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

*A.*   *Federal Question Cases:*

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Patent
☐ 6. Labor-Management Relations
☑ 7. Civil Rights
☐ 8. Habeas Corpus
☐ 9. Securities Act(s) Cases
☐ 10. Social Security Review Cases
☐ 11. All other Federal Question Cases
   *(Please specify):* _____

*B.*   *Diversity Jurisdiction Cases:*

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify):* _____
☐ 7. Products Liability
☐ 8. Products Liability – Asbestos
☐ 9. All other Diversity Cases
   *(Please specify):* _____

---

## ARBITRATION CERTIFICATION

*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____ Daniel S. Orlow _____, counsel of record *or* pro se plaintiff, do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☒ Relief other than monetary damages is sought.

DATE: 03/22/2022 _____ _____ 311702
_____ *Attorney-at-Law / Pro Se Plaintiff* _____ *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Plaintiff, | : | |
| | : | |
| **MAUREEN CASSIDY** | : | |
| **Philadelphia, PA** | : | Case No. |
| | : | |
| v. | : | |
| | : | |
| Defendants, | : | JURY TRIAL DEMANDED |
| | : | |
| **POND LEHOCKY GIORDANO, LLP** | : | |
| | : | |
| **POND LEHOCKY, LLP** | : | |
| | : | |

**CIVIL ACTION COMPLAINT**

I.   **INTRODUCTION**

Plaintiff, Maureen Cassidy, brings this action against her former employer, Pond Lehocky, for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq.* ("Title VII"), the Equal Pay Act of 1963, 29 U.S.C. § 206(d) *et seq.* ("EPA"), the Pennsylvania Human Relations Act, 43 Pa. Stat. § 951, *et seq.* ("PHRA"), the Philadelphia Fair Practices Ordinance, Phila. Code § 9-1100, *et seq.* ("PFPO"), and the Pennsylvania Wage Payment and Collection Law, 43 Pa. Stat. §260.1 ("WPCL").

Despite Plaintiff's dedication and consistently excellent performance throughout her employment, Plaintiff was discriminated against on account of her sex (female), retaliated against for submitting complaints of sex discrimination to the Pennsylvania Human Relations Commission, and denied compensation due and owing to her pursuant to the terms of her contract of employment. Plaintiff seeks damages, including back-pay, front-pay, compensatory, liquidated, punitive, attorneys' fees and costs, and all other relief that this Court deems

appropriate.

## II.   **PARTIES**

1.      Plaintiff Maureen Cassidy is an individual and citizen of the Commonwealth of Pennsylvania, residing therein in Philadelphia, PA.

2.      Defendant Pond Lehocky Giordano, LLP is organized under the laws of the Commonwealth of Pennsylvania with a principal place of business located at 2005 Market Street, Philadelphia, PA 19103.

3.      Defendant Pond Lehocky, LLP is organized under the laws of the Commonwealth of Pennsylvania with a principal place of business located at  2005 Market Street, Philadelphia, PA 19103.

4.      The operations of Defendants are substantively integrated and consolidated. Without limitation, and by way of example:

     a.      Defendants share common leadership;

     b.      Defendants collectively and individually do business under the trade name "Pond Lehocky";

     c.      Defendants have each issued Plaintiff appropriate year-end tax documents;

     d.      Defendants share a common principal place of business located at 2005 Market Street, Philadelphia, PA 19103;

     e.      Defendants issue press releases and other marketing-related materials that refer to Pond Lehocky as a single enterprise of which Defendants are each a part;

5.      At all times material hereto, Plaintiff was an employee of Defendants within the meaning of the statutes which form the basis of this matter.

6.      At all times material hereto, Defendants were an employer of Plaintiff within the meaning of the statutes which form the basis of this matter.

7.      At all times material hereto, Defendants employed more than fifteen (15) people.

8.      At all times material hereto, Defendants acted by and through their authorized agents, servants, workmen, and/or employees within the course and scope of their employment with Defendants and in furtherance of Defendants' business.

## III.    <u>JURISDICTION AND VENUE</u>

9.      The causes of action set forth in this Complaint arise under Title VII, the EPA, the PHRA, the PFPO, and the WPCL.

10.     The District Court has subject matter jurisdiction over Count I (Title VII) and Count II (EPA) pursuant to 28 U.S.C. § 1331

11.     The District Court has supplemental jurisdiction over Count III (PHRA), Count IV (PFPO), and Count V (WPCL) pursuant to 28 U.S.C. § 1367.

12.     Venue is proper under 28 U.S.C. § 1391(b).

13.     On or about June 18, 2020, Plaintiff filed a Complaint of Discrimination with the Pennsylvania Human Relations Commission (PHRC), complaining of the various acts of discrimination alleged herein.  Plaintiff's Complaint of Discrimination was dual-filed with the Equal Employment Opportunity Commission.  Attached hereto, incorporated herein, and marked as Exhibit "A" is a true and correct copy of the June 18, 2020 Complaint of Discrimination (with minor redactions for purposes of electronic filing of confidential/identifying information).

14.     On or about November 5, 2020, Plaintiff filed a Second Complaint of Discrimination with the PHRC, complaining of the various acts of discrimination and retaliation alleged herein.  Plaintiff's Second Complaint of discrimination was dual-filed with the Equal

Employment Opportunity Commission.  Attached hereto, incorporated herein, and marked as Exhibit "B" is a true and correct copy of the November 5, 2020 Complaint of Discrimination (with minor redactions for purposes of electronic filing of confidential/identifying information).

15.     Plaintiff's PHRC Complaints of Discrimination were each assigned PHRC Case No. 201904783 and EEOC No. 17F202061308.

16.     On January 10, 2022, the EEOC issued Plaintiff a Notice of Dismissal and Right to Sue.  Attached hereto as "Exhibit C" is a true and correct copy of that notice.

17.     On February 17, 2022, the Pennsylvania Human Relations Commission informed Plaintiff that more than one (1) year had passed since the filing of her Complaint of Discrimination, advising her that she had the right to bring an action in the appropriate Court of Common Pleas based on the alleged violations of the PHRA.

18.     Plaintiff is filing this complaint within ninety (90) days from her receipt of the EEOC's Notice of Dismissal and Right to Sue.

19.     Plaintiff has fully complied with all administrative pre-requisites for the commencement of this action.

## IV.   **FACTUAL ALLEGATIONS**

20.     Plaintiff was hired by Defendants in or about December 2015.

21.     Plaintiff held the position of Coverage Attorney in Defendants' workers' compensation department.

22.     As a Coverage Attorney in Defendants' workers' compensation department, Plaintiff's job duties and responsibilities included, but were not limited to, providing various forms of litigation support to cases assigned to Handling Attorneys and Partners.

23.     At the time of her termination, Plaintiff reported to Sam Pond (male), Defendants' Managing Partner.

24.     Plaintiff consistently performed her job duties in a highly competent manner and received positive feedback on her performance.

25.     During Plaintiff's employment with Defendants, six (6) out of the seven (7) Handling (first chair) Attorneys in the Defendants' workers' compensation department were male.

26.     During Plaintiff's employment with Defendants, all of Defendants' Partners were male and none were female.

27.     On April 9, 2019, Alexis Handrich (female) vacated her position as Handling Attorney in Defendants' workers' compensation department.

28.     On April 11, 2019, in a conversation with David Stern (male), then Partner, Plaintiff asked to be promoted to the Handling Attorney position that had been vacated by Handrich.

29.     On April 12, 2019, Defendants failed to promote Plaintiff to the vacant Handling Attorney position.

30.     Instead of promoting Plaintiff to Handling Attorney, Defendants promoted Conor Shields (male).

31.     Plaintiff was qualified for the Handling Attorney position, as she had been the Coverage (second chair) Attorney for Handrich and was familiar with her cases.

32.     Plaintiff was more qualified than Shields for the Handling Attorney position vacated by Handrich.

33.     The Handling Attorney position vacated by Handrich was not posted.

34.     Plaintiff had no opportunity to formally apply for the vacant Handling Attorney position.

35.     Following Shields' promotion to Handling Attorney, Plaintiff repeatedly expressed her desire to Defendants to be promoted to Handling Attorney.

36.     Plaintiff was never promoted to Handling Attorney.

37.     Defendants treated male attorneys better, and in a more preferential manner, than it treated female attorneys, including Plaintiff.

38.     Defendants provided male attorneys, including Taylor Cohen (male), Coverage Attorney, and Nick Liermann (male), Coverage Attorney, with cases, mentoring, greater access to interactions with Partners, and career advancement and networking opportunities that Plaintiff was not offered or provided.

39.     Defendants compensated Plaintiff at a rate less than the rate at which it compensated male attorneys of similar background, qualifications, and experience.

40.     Defendants compensated Plaintiff at a rate less than the rate at which it compensated male Attorneys for work which required equal skill, effort, and responsibility performed under similar working conditions.

41.     For example, and without limitation, Defendants gave Cohen significant compensation incentives to work for Defendants, including the promise of a promotion to Handling Attorney and a lump sum payment of $50,000.

42.     On numerous occasions, Pond made comments about Plaintiff's appearance and clothing.

43.     To Plaintiff's knowledge, Pond never commented on the appearance or clothing of male attorneys.

44.     In or about January 2020, in separate meetings with Pond and Thomas Giordano (male), Partner, Plaintiff again asked to be promoted to Handling Attorney.

45.     In response to her January 2020 request to be promoted to Handling Attorney, Plaintiff received positive performance feedback, but no indication that she would be promoted.

46.     In or about February 2020, Plaintiff was instructed to train certain male attorneys to perform the job duties of a Coverage Attorney.

47.     Specifically, and by way of example, Plaintiff trained Anthony DiAngelo and Joseph Squadroini on medical deposition techniques and taking client testimony.

48.     On March 20, 2020, on a phone call with Giordano, Plaintiff was placed on "furlough."   The stated reason for Plaintiff being placed on "furlough" was the COVID-19 pandemic.

49.     Giordano told Plaintiff that she was not being terminated and that she would be brought back to work "as soon as possible."

50.     Defendants placed on "furlough" eight (8) of the ten (10) female Coverage Attorneys in the workers' compensation department.

51.     Defendants retained six (6) of the nine (9) male Coverage Attorneys in the workers' compensation department.

52.     On May 6, 2020, Defendants terminated Plaintiff's employment, effective May 31, 2020.

53.     Defendants terminated eight (8) of the ten (10) female Coverage Attorneys in the workers' compensation department.

54.     Defendants retained six (6) of the nine (9) male Coverage Attorneys in the workers' compensation department.

55.    Defendants retained at least five (5) male Attorneys in positions for which Plaintiff was more qualified and who had less service time with Defendants than Plaintiff.

56.    Defendants did not terminate any Handling Attorneys, six (6) of the seven (7) of whom were male.

57.    Plaintiff had no performance or disciplinary issues during her employment with Defendants.

58.    Pursuant to the terms of her contract of employment with Defendants, Plaintiff was entitled to compensation in connection with three (3) different categories of cases: (1) "referral credit cases"; (2) "Stern cases"; and (3)"JYD cases."

59.    "Referral credit cases" were cases where Plaintiff was responsible for generating the client for Defendants.  Pursuant to the terms of her contract of employment with Defendants, Plaintiff was entitled to 20% of Defendants' attorney fee on these cases.

60.    "Stern cases" were a sub-category of "referral credit case" that had left Defendants' firm with former partner David Stern.  Pursuant to the terms of her contract of employment with Defendants, Plaintiff was entitled to 20% of Defendants' attorney fee on these cases.

61.    "JYD cases" were cases where the prospective client of Defendants had been rejected or was unable to be successfully contacted.  Pursuant to the terms of her contract of employment with Defendants, if Plaintiff successfully converted these individuals into clients of Defendants, she was entitled to 10% of Defendants' attorney fee on those cases.

62.    At the time of her termination, Plaintiff was owed compensation for "referral credit cases", "JYD cases", and also "Stern cases".

63.     On May 9, 2020, Pond stated the following to Plaintiff in an email regarding her "referral credit cases":  "Please note that any fees earned, and not yet paid, prior to through May 31, 2020, pursuant to your employment agreement, will be paid by June 5, 2020.  **In addition, despite some contrary language in the employment agreement, we will honor your right to a twenty-percent (20%) fee in any case where you have been identified as the credit attorney in an ongoing basis.**"  Pond stated: "[A]ny cases that you brought in as your credit will be honored.  Also, we will honor as your credit, anyone referred by one of your clients."

64.     On May 16, 2020, in an email to Pond, Plaintiff asked the following: "Just to clarify - I will be entitled to ongoing fees for cases where I am the credit attorney after June 5, 2020, correct?  How will those be paid?  I assume this includes the few remaining JYD cases I have left as well.  Anything with the cases that went with Dave [Stern] where I am the credit attorney? There were two."

65.     On May 16, 2020, in an email from Pond, he stated that Plaintiff "would get paid monthly" for her referral credit cases.  He stated: "The referral fees have no time limit. Not sure what you are referring to in ref the JYD cases? Are they your credit?  We will honor the cases stern took but I need the names – do you know them? otherwise I'll get them."

66.     On May 16, 2020, in emails to Pond, Plaintiff provided a list of cases for which she was owed compensation, and confirmed that she was also owed compensation for certain JYD cases.

67.     On May 19, 2020, Plaintiff was provided with a "list of [referral] credit cases where [Plaintiff] ha[s] been or will be paid fees."

68.     The list provided to Plaintiff on May 19, 2020 showed that Plaintiff was owed fees in twelve (12) of the fourteen (14) cases that she had identified to Pond on May 16, 2020.

69.     On May 19, 2020, Plaintiff provided Defendants with a list of additional cases for which she was owed fees.

70.     On May 21, 2020, Plaintiff requested an updated list of the cases for which she was owed fees.

71.     On May 21, 2020, in an email to Thomas Giordano, Jr. (male), Founding Partner, Plaintiff stated that she had not received a response to her May 19 and May 21 emails wherein she requested an updated list of the cases for which she was owed fees.

72.     On May 22, 2020, in an email from Giordano, he stated the following: "We actually spoke about this very topic yesterday. Bryan and his team are going to be reviewing the case names you provided and make sure whatever we owe you will be paid."

73.     On May 31, 2020, in emails to Pond, Plaintiff provided a list of cases for which she was owed fees that were not previously identified by Defendants.  In her May 31 emails to Pond, she stated, "After I sent the list of cases of credits I have, Jen Heinz sent a list back that was missing the JYD's and one other case. I simply have been asking for an updated list of all the cases so I can get confirmation that I will receive credits for all of them and not just those on the list that Jen Heinz sent me."

74.     On June 3, 2020, in an email from Giordano, he stated: "… any [Maureen] Morty Cassidy referred cases (known as your 'credit' cases) that are in Pond Lehocky's inventory will be paid on an as-received bases at 20% of the net attorney fee."

75.     In Giordano's June 3 email he outlined cases, credit, and calculations, and stated: "Based on the above, we felt it was more than fair to pay you a lump sum of $10,125 as full and final payment for the Stern cases and JYD cases.  We have decided to pay you this now instead of waiting to see if those cases are even awarded or settled.  Its [sic] very possible that there

would be no fee in any of those cases and we did not even other factors such as low comp rates, Judge assignments, etc.   I do however want to be clear that this is it for everything that may or may not be outstanding to you that is not a clear cut, Morty Cassidy referral to the Firm.   Does that make sense?   Please let me know if you have any questions about this because in consideration of the $10,125.00 we would expect a fully executed release."

76.     On June 4, 2020, in an email to Giordano, Plaintiff stated that, according to her calculations, she was owed approximately $17,630 for just her JYD and Stern credit cases for May 2020.

77.     On June 5, 2020, in an email from Giordano, he stated that Defendants were "not negotiating," and that Defendants "feel" that $10,125 "is beyond fair and more than what [Defendants] ha[ve] to do."

78.     On or about June 7, 2020, Plaintiff received a check for $1,862.98, representing a portion of the referral credit fees she was owed on cases between March and May 2020.

79.     On June 18, 2020, Plaintiff filed her first Complaint of Discrimination with the PHRC.

80.     Following the filing of her first Complaint of Discrimination, Plaintiff received no further payments on any cases in which she was identified as the credit attorney, despite Defendants' previous statement that fees in such cases received by Defendants would be paid to her on an ongoing basis.

81.     On September 16, 2020, in an email to Giordano, Plaintiff followed up regarding additional fees that she was owed by Defendants.

82.     On September 16, 2020, in a response email from Giordano, he stated that he had forwarded Plaintiff's email to Defendants' attorney.

11

83.     On October 14, 2020, in an email to Giordano, Plaintiff again followed up on the fees that she was owed by Defendants.

84.     On October 15, 2020, in a response email from Giordano, he stated the following: "[W]e will forward your email to our counsel. As you have filed a lawsuit against us, I suggest that you direct all communications for our Firm through your attorney."

85.     On October 28, 2020, in an email to Giordano Plaintiff stated the following: "This is money that is owed to me, which I was told would be paid to me, and to not pay it is a violation of the PA Wage Payment and Collection Law.  Demand is made under that law, via this email, to pay the money to me immediately.  To not pay me the money because I filed a sex discrimination claim with the Pennsylvania Human Relations Commission is unlawful retaliation."

86.     At the present time, there remains due and owing to Plaintiff significant portions of the compensation due to her under the terms and conditions of her contract of employment with Defendants.

87.     Plaintiff's sex (female) was a motivating and/or determinative factor in Defendants' discriminatory treatment of her, including her lower rate of compensation, failing to promote her to the position of Handling Attorney, placing her on furlough status, terminating her employment, and failing to pay her fees to which she was entitled pursuant to the terms and conditions of her contract of employment with Defendants.

88.     The filing of Plaintiff's Complaints of Discrimination with the PHRC and Plaintiff's October 28, 2020 Complaint to Giordano regarding Defendants violations of the WPCL were each motivating and or determinative factors in Defendants' retaliatory conduct of

refusing to pay to Plaintiff fees to which she was entitled pursuant to the terms of her contract of employment with Defendants.

89.     As a direct and proximate result of the discriminatory and retaliatory conduct of Defendants, Plaintiff has in the past incurred, and may in the future incur, a loss of earnings and/or earning capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time.

90.     Despite its contractual obligation to compensate Plaintiff for her "referral credit cases", "JYD cases", and "Stern cases", Defendants have failed to compensate Plaintiff accordingly.

## COUNT I
## Title VII of the Civil Rights Act of 1964 (Title VII)

91.     Plaintiff incorporates herein by reference the paragraphs set forth above as if set forth herein in their entirety.

92.     Defendants have violated Title VII by committing the foregoing acts of discrimination and retaliation.

93.     Defendants intentionally discriminated and retaliated against Plaintiff because of her sex and her complaints of sex discrimination and retaliation, including with respect to her rate of compensation, failing to promote her to Handling Attorney, placing her on furlough status, terminating her employment, and failing to pay her compensation due and owing to her pursuant to her contract of employment with Defendants.

94.     Defendants acted with malice and/or reckless indifference toward the federally protected rights of Plaintiff and its conduct warrants the imposition of punitive damages.

95.     As a direct and proximate result of Defendants' violation of Title VI, Plaintiff has suffered the damages and losses set forth herein.

96.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

97.     No previous application has been made for the relief requested herein.

## COUNT II
## Equal Pay Act of 1963 (EPA)

98.     Plaintiff incorporates herein by reference the paragraphs set forth above as if set forth herein in their entirety.

99.     Defendants have violated the EPA by committing the foregoing acts of discrimination and pay inequity against Plaintiff.

100.    At all relevant times, Defendants compensated Plaintiff (female) at a rate less than the rate at which it compensated employees of the opposite sex (male) for equal work requiring equal skill, effort, and responsibility performed under similar working conditions.

101.    Defendants' violations of the EPA were not carried out in good faith and Defendants did not have reasonable grounds for believing that its conduct did not amount to a violation of the law, thus warranting the imposition of liquidated damages.

102.    As a direct and proximate result of Defendants' violation of the EPA, Plaintiff has suffered the damages and losses set forth herein.

103.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

104.    No previous application has been made for the relief requested herein.

## COUNT III
## Pennsylvania Human Relations Act (PHRA)

105.    Plaintiff incorporates by reference the foregoing paragraphs of this Complaint, as if fully set forth herein.

106.    Defendants have violated the PHRA by committing the foregoing acts of discrimination and retaliation.

107.    Defendants intentionally discriminated and retaliated against Plaintiff because of her sex and her complaints of sex discrimination and retaliation, including with respect to her rate of compensation, failing to promote her to Handling Attorney, placing her on furlough status, terminating her employment, and failing to pay her compensation due and owing to her pursuant to her contract of employment with Defendants.

108.    As a direct and proximate result of Defendants' violation of the PHRA, Plaintiff has suffered the damages and losses set forth herein.

109.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

110.    No previous application has been made for the relief requested herein.

## COUNT IV
## Philadelphia Fair Practices Ordinance (PFPO)

111.    Plaintiff incorporates by reference the foregoing paragraphs of this Complaint, as if fully set forth herein.

112.    Defendants have violated the PFPO by committing the foregoing acts of discrimination and retaliation.

113.    Defendants intentionally discriminated and retaliated against Plaintiff because of her sex and her complaints of sex discrimination and retaliation, including with respect to her rate of compensation, failing to promote her to Handling Attorney, placing her on furlough status, terminating her employment, and failing to pay her compensation due and owing to her pursuant to her contract of employment with Defendants.

114.    Defendants' violations were done with malice and/or reckless indifference and warrant the imposition of punitive damages.

115.    As a direct and proximate result of Defendants' violation of the PFPO, Plaintiff has suffered the damages and losses set forth herein.

116.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

117.    No previous application has been made for the relief requested herein.

## COUNT V
## Pennsylvania Wage Payment and Collection Law (WPCL)

118.    Plaintiff incorporates herein by reference the above paragraphs as if set forth herein in their entirety.

119.    Pursuant to the terms of her contract of employment with Defendants, there remains due and owing to Plaintiff portions of the fees to which she was entitled in connection with her "referral credit cases", "JYD cases", and "Stern cases.".

120.    By refusing to compensate Plaintiff pursuant to her contract of employment, Defendants have deprived Plaintiff of compensation which she earned and to which she is entitled.

121.    Defendants failed to compensate Plaintiff within thirty (30) days of when the fees and compensation described herein became due and owing to her under her contract of employment with Defendants.

122.    Defendants' conduct is in violation of the WPCL.

123.    Defendants had no good-faith basis to refuse to pay her the fees and compensation described herein to which she was entitled pursuant to her contract of employment with Defendants.

124.    As a result of Defendants' conduct and violations of the WPCL, Plaintiff is entitled to an award of liquidated damages in an amount equal to Twenty-Five percent (25%) of the total amount owed to Plaintiff.

125.    Plaintiff is entitled to attorneys' fees and costs as mandated by the WPCL

126.    No previous application has been made for the relief requested herein.

## RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff, Maureen Cassidy, and against Defendants:

a)    declaring the acts and practices complained of herein to be in violation of Title VII;

b)    declaring the acts and practices complained of herein to be in violation of the EPA;

c)    declaring the acts and practices complained of herein to be in violation of the PHRA;

d)    declaring the acts and practices complained of herein to be in violation of the PFPO;

e)      declaring the acts and practices complained of herein to be in violation of the WPCL

f)      enjoining and restraining permanently the violations alleged herein;

g)      awarding damages to Plaintiff for the past and future economic losses that she has suffered;

h)      awarding compensatory damages to Plaintiff for past and future emotional upset, mental anguish, humiliation, loss of life's pleasures, and pain and suffering;

i)      awarding punitive damages to Plaintiff;

j)      awarding liquidated damages to Plaintiff pursuant to the WPCL and the EPA.

k)      awarding Plaintiff the costs of this action, together with reasonable attorney's fees;

l)      granting such other and further relief as this Court deems appropriate.


**CONSOLE MATTIACCI LAW, LLC**


Dated:  March 22, 2022          BY:    _____
                                                 Daniel S. Orlow, Esq.
                                                 1525 Locust Street, 9th Floor
                                                 Philadelphia, PA 19102
                                                 (215) 545-7676
                                                 Attorneys for Plaintiff, Maureen Cassidy


18

# Exhibit A

COMMONWEALTH OF PENNSYLVANIA
GOVERNOR'S OFFICE
PENNSYLVANIA HUMAN RELATIONS COMMISSION

Received

JUN 18 2020

PA Human Relations Commission
Philadelphia Regional Office

## COMPLAINT

COMPLAINANT:

**MAUREEN CASSIDY**

v.

RESPONDENT:

**POND LEHOCKY GIORDANO LLP**

Docket No.  2019 04783

1. The Complainant herein is:

    Name:       Maureen Cassidy

    Address:    

2. The Respondent herein is:

    Name:       Pond Lehocky Giordano LLP

    Address:    2005 Market Street, 3rd Floor
                Philadelphia, PA 19103

3. I, Maureen Cassidy, the Complainant herein, allege that I was subjected to unlawful

discrimination because of my sex (female), as set forth below:

### Discrimination

A. I specifically allege:

[1]      I was hired by Respondent in or about December 2015;

[2]      I consistently performed my job duties in a highly competent manner and

received positive performance feedback.

[3]        I held the position of Coverage Attorney in the Worker's Compensation Department.

[4]        I last reported to Samuel Pond (male), Managing Partner.

[5]        Respondent has an underrepresentation of female Attorneys, particularly in high-level positions.

[6]        All of Respondent's Partners are male and none are female.

[7]        Out of Respondent's seven (7) Handling (first chair) Attorneys in the Worker's Compensation Department, six (6) are male and one (1) is female.

[8]        On April 9, 2019, Alexis Handrich (female) stepped down and/or was pushed out as the only female Handling Attorney.

[9]        On April 11, 2019, in a conversation with David Stern (male), then Partner, I asked to be promoted to Handling Attorney.

[10]       On April 12, 2019, Respondent failed to promote me to the open Handling Attorney position. I was qualified for the position, as I had been the Coverage (second chair) Attorney for Handrich and was familiar with her cases. Instead of promoting me, Respondent promoted Conor Shields (male). I was more qualified for the position than Shields. I had no opportunity to apply for the open Handling Attorney position because the position was not posted. If the position was posted, I would have applied for the position.

[11]       Respondent provided no explanation, including the selection criteria, as to why Respondent promoted a less qualified, male employee instead of promoting me.

[12]       Respondent failed to promote me to Handling Attorney because of my sex.

[13]       I repeatedly expressed my desire to be promoted to Handling Attorney.

[14]       Respondent repeatedly failed to promote me to Handling Attorney.

[15]     Respondent repeatedly failed to promote me to Handling Attorney because of my sex.

[16]     Respondent provided male Attorneys, including Taylor Cohen (male), Coverage Attorney, and Nick Liermann (male), Coverage Attorney, with cases, mentoring, greater access to interactions with Partners, and career advancement and networking opportunities that I was not offered or provided.

[17]     Respondent treated male Attorneys better, and in a more preferential manner, than Respondent treated female Attorneys, including me.

[18]     Respondent gave Cohen significant incentives, including a promise of promotion to Handling Attorney and a lump sum of $50,000.

[19]     Respondent did not give me significant incentives, including a promise of promotion to Handling Attorney or a lump sum of $50,000, despite my being more qualified than Cohen.

[20]     Respondent failed to give me significant incentives, including a promise of promotion to Handling Attorney and a lump sum of $50,000, because of my sex.

[21]     Respondent failed to compensate me as much as it compensated male Attorneys because of my sex.

[22]     On numerous occasions, Pond made comments about my appearance and my clothes. I never heard Pond comment on male Attorneys' appearance or clothes.

[23]     In or about January 2020, in separate meetings with Pond and Thomas Giordano (male), Partner, I again asked to be promoted to Handling Attorney. I received positive performance feedback but no indication that I would be promoted.

[24]     Respondent failed to promote me to Handling Attorney because of my sex.

[25]     In or about February 2020, I was instructed to train certain male Attorneys to do my job duties.

[26]     On March 20, 2020, on a phone call with Giordano, Respondent placed me on "furlough." The stated reason was the COVID-19 pandemic. Giordano told me that I was not being terminated and that I would be brought back to work at Respondent "as soon as possible."

[27]     Respondent placed me on "furlough" because of my sex.

[28]     Respondent placed on "furlough" eight (8) of the ten (10) female Coverage Attorneys in the Worker's Compensation Department.

[29]     Respondent retained six (6) of the nine (9) male Coverage Attorneys in the Worker's Compensation Department.

[30]     Respondent provided no explanation, including the selection criteria, as to why I was placed on "furlough" and less qualified, male employees were not.

[31]     On May 6, 2019, on a videoconference with Pond, Giordano, Jerry Lehocky (male), Partner, Jackie Donovan (female), Chief Operating Officer, Sean Lehocky (male), Chief Strategy Officer, Bryan Reilly (male), Chief Financial Officer, Corrine Bolaños (female), Chief Marketing Officer, and Jennifer Heinz (female), Chief Human Resources Officer, Respondent terminated my employment, effective May 31, 2020. Respondent provided no explanation, including the selection criteria, as to why I was terminated and numerous less qualified, male employees were retained.

[32]     Respondent terminated my employment because of my sex.

[33]     Respondent terminated eight (8) of the ten (10) female Coverage Attorneys in the Worker's Compensation Department.

[34]   Respondent retained six (6) of the nine (9) male Coverage Attorneys in the Worker's Compensation Department.

[35]   I was more qualified than male Coverage Attorneys who were retained.

[36]   Respondent retained at least five (5) male Attorneys in positions for which I was more qualified and who had less service time with Respondent than I had.

[37]   Respondent did not terminate any Handling Attorneys—six (6) of the seven (7) of whom were male.

[38]   I had no performance or disciplinary issues during my employment with Respondent.

[39]   Female Attorneys at Respondent have told me that they believe that there is sex discrimination against female Attorneys at Respondent.

[40]   Respondent's sex discriminatory conduct toward me has caused me emotional distress.

[41]   Respondent's comments and conduct evidence a bias against female employees.

[42]   I bring this Complaint as a class and pattern and practice Complaint on behalf of myself and any and all current or former employees of Respondent who are female, and have been discriminated against based on sex, in connection with failure to be promoted, compensation, "furlough," termination, and being subjected to a hostile work environment.

B.   Based on the aforementioned, I allege that Respondent has discriminated against me because of my sex (female), in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), the Equal Pay Act, 29 U.S.C. § 206 *et seq.*

("EPA"), the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, *et seq.* ("PHRA"), and the Philadelphia Fair Practices Ordinance, Phila. Code § 9-1101, *et seq.* ("PFPO").

    4.    The allegations in Paragraph 3 hereof constitute unlawful discriminatory and retaliatory practices in violation of:

      __X__      Pennsylvania Human Relations Act (Act of October 27, 1955, P.L. 744, as amended) Section 5 Subsection(s): __(a)__

      ____      Section 5.1 Subsection(s) _____

      ____      Section 5.2 Subsection(s) _____

      ____      Pennsylvania Fair Educational Opportunities Act (Act of July 17, 1961, P.L. 766, as amended) Section 4 Subsection(s) _____

    5.    Other action based upon the aforesaid allegations has been instituted by the Complainant in any court or before any other commission within the Commonwealth of Pennsylvania as follows:

      __X__      This charge will be referred to the EEOC for the purpose of dual filing.

    6.    The Complainant prays that Respondent be required to:

    (a) Make the Complainant whole.

    (b) Eliminate all unlawful discriminatory and retaliatory practice(s) and procedure(s).

    (c) Remedy the discriminatory and retaliatory effect of past practice(s) and procedure(s).

    (d) Take further affirmative action necessary and appropriate to remedy the violation complained of herein.

    (e) Provide such further relief as the Commission deems necessary and appropriate.

## VERIFICATION

I hereby verify that the statements contained in this complaint are true and correct to the best of my knowledge, information, and belief. I understand that false statements herein are made subject to the penalties of 18 P.A.C.A. Section 4904, relating to unsworn falsification to authorities.

___6·17·2020___          _Mcassidy_

(Date Signed)          (Signature)   Maureen Cassidy

# Exhibit B

Received

NOV 0 5 2020

PA Human Relations Commission
Philadelphia Regional Office

COMMONWEALTH OF PENNSYLVANIA
GOVERNOR'S OFFICE
PENNSYLVANIA HUMAN RELATIONS COMMISSION

**SECOND COMPLAINT**

COMPLAINANT:                   :
                               :
**MAUREEN CASSIDY**            :          Docket No.  2019 04783
                               :
v.                             :
                               :
RESPONDENT:                    :
                               :
**POND LEHOCKY GIORDANO LLP**  :
                               :

1. The Complainant herein is:

    Name:      Maureen Cassidy

    Address:   ████████████████████████

2. The Respondent herein is:

    Name:      Pond Lehocky Giordano LLP

    Address:   2005 Market Street, 3rd Floor
               Philadelphia, PA 19103

3. I, Maureen Cassidy, the Complainant herein, allege that I was subjected to unlawful

discrimination because of my sex (female) and unlawful retaliation because of my sex

discrimination complaints, as set forth below.

**Discrimination and Retaliation**

**A. I specifically allege:**

[1]      On May 9, 2020, in an email from Samuel Pond (male), Managing

Partner, via Jennifer Heinz (female), Chief Human Resources Officer, he stated the following:

"Please note that any fees earned, and not yet paid, prior to through May 31, 2020, pursuant to your employment agreement, will be paid by June 5, 2020. **In addition, despite some contrary language in the employment agreement, we will honor your right to a twenty-percent (20%) fee in any case where you have been identified as the credit attorney in an ongoing basis.**" He stated: "[A]ny cases that you brought in as your credit will be honored. Also, we will honor as your credit, anyone referred by one of your clients."

[2]     On May 16, 2020, in an email to Pond and Heinz, I asked the following: "Just to clarify- I will be entitled to ongoing fees for cases where I am the credit attorney after June 5, 2020, correct? How will those be paid? I assume this includes the few remaining JYD cases I have left as well. Anything with the cases that went with Dave [Stern] where I am the credit attorney? There were two."

[3]     I was owed fees in three types of cases: referral credit cases; JYD cases; and Stern cases.

[4]     On May 16, 2020, in an email from Pond, he stated that I "would get paid monthly" for my referral credit cases. He stated: "The referral fees have no time limit. Not sure what you are referring to in ref the JYD cases? Are they your credit? We will honor the cases stern took but I need the names – do you know them? otherwise I'll get them."

[5]     On May 16, 2020, in emails to Pond, I provided the list of cases in which I was owed fees, and confirmed that the JYD cases were also my credit.

[6]     On May 19, 2020, in an email from Heinz, she provided me with a "list of credit cases where [I] have been or will be paid fees." The list showed that I was owed fees in twelve (12) of the fourteen (14) cases.

[7]     On May 19, 2020, in a response email to Heinz, I responded with a list of additional cases for which I was owed fees.

[8]     On May 21, 2020, in an email to Heinz, I requested an updated list of the cases for which I was owed fees.

[9]     On May 21, 2020, in an email to Thomas Giordano, Jr. (male), Founding Partner, I stated that I had not received a response to my above emails and requested an updated list of the cases for which I was owed fees.

[10]    On May 22, 2020, in an email from Giordano, copying Bryan Reilly (male), Chief Financial Officer, he stated the following: "We actually spoke about this very topic yesterday. Bryan and his team are going to be reviewing the case names you provided and make sure whatever we owe you will be paid."

[11]    On May 29, 2020, in an email from Matthew Palmer (male), Senior Financial Analyst, in response to my follow-up email to him regarding payment of the fees that I was owed, he stated he would get back to me next week, and that he had "been reviewing the fees owed and w[ould] be sending out a check in early June."

[12]    On May 29, 2020, in an email from Pond, he stated that he heard I was not receiving responses to my emails, and told me to let him know how he could help.

[13]    On May 31, 2020, in emails to Pond, I stated the following and provided a list of cases for which I am owed fees that were not included on Respondent's initial list of my credit cases: "After I sent the list of cases of credits I have, Jen Heinz sent a list back that was missing the JYD's and one other case. I simply have been asking for an updated list of all the cases so I can get confirmation that I will receive credits for all of them and not just those on the list that Jen Heinz sent me."

[14]     On May 31, 2020, in an email response from Pond, he told me that he would look into these cases.

[15]     On June 3, 2020, in an email from Giordano, he stated: "First and foremost, any [Maureen] Morty Cassidy referred cases (known as your 'credit' cases) that are in Pond Lehocky's inventory will be paid on an as-received bases at 20% of the net attorney fee." He outlined cases, credit, and calculations, and stated: "Based on the above, we felt it was more than fair to pay you a lump sum of $10,125 as full and final payment for the Stern cases and JYD cases. We have decided to pay you this now instead of waiting to see if those cases are even awarded or settled. Its [sic] very possible that there would be no fee in any of those cases and we did not even other factors such as low comp rates, Judge assignments, etc. I do however want to be clear that this is it for everything that may or may not be outstanding to you that is not a clear cut, Morty Cassidy referral to the Firm. Does that make sense? Please let me know if you have any questions about this because in consideration of the $10,125.00 we would expect a fully executed release."

[16]     On June 4, 2020, in an email to Giordano, I stated that, according to my calculations, I was owed approximately $17,630 for my credit cases.

[17]     On June 5, 2020, in an email from Giordano, he stated that Respondent was "not negotiating," and that Respondent "feel[s]" that $10,125 "is beyond fair and more than what [Respondent] ha[s] to do."

[18]     On June 5, 2020, in an email from Amber Adams (female), Human Resources Manager, she stated the following: "Pursuant to the e-mail dated 5/19/20 from Jennifer Heinz, attached is a copy of check and corresponding statement for all fees earned 5/31

or prior. These are being mailed today. Moving forward, you will be paid on any cases in which you are the identified as the credit attorney, and as those fees are received by the firm."

[19]     On or about June 7, 2020, I received a check for $1,862.98, representing a portion of the referral credit fees I was owed on cases between March and May 2020.

[20]     On June 11, 2020, in an email from Giordano, he stated the following: "Attached you find a general release. Please review it and if acceptable, sign and return. As soon as we receive it, the check for $10,125.00, as we discussed, will be sent."

[21]     On June 11, 2020, in an email to Giordano, I asked why I was being asked to sign a release agreement, and why the release was general and not specific to the fees issue. I stated that these fees were payments owed to me per my contract, and that the amount that Respondent was offering me was less than the amount that I was owed.

[22]     On June 11, 2020, in a response email from Giordano, he stated that Respondent was "simply protecting" itself.

[23]     I refused to sign the agreement that would release my claims against Respondent in exchange for money I had earned and was owed.

[24]     Giordano told that, moving forward, I should "not hesitate to reach out to [him] directly."

[25]     The male attorney who Respondent terminated when I was terminated was paid and is continuing to be paid fees he earned and was owed by Respondent, without having to sign a release agreement.

[26]     Respondent instructed me to sign a release agreement in exchange for paying me fees that I am owed because of my sex.

[27]     On June 18, 2020, I filed my first Complaint with the PHRC against Respondent.

[28]     I received no further payments on any cases in which I was identified as the credit attorney, despite my understanding that fees in such cases were received by Respondent and owed to me on an ongoing basis.

[29]     On September 16, 2020, in an email to Giordano, I followed up regarding additional fees that I was owed by Respondent.

[30]     On September 16, 2020, in a response email from Giordano, he stated that he had forwarded my email to Respondent's attorney.

[31]     On October 14, 2020, in an email to Giordano, I again followed up on the fees that I was owed by Respondent.

[32]     On October 15, 2020, in a response email from Giordano, he stated the following: "[W]e will forward your email to our counsel. As you have filed a lawsuit against us, I suggest that you direct all communications for our Firm through your attorney."

[33]     On October 28, 2020, in an email to Giordano, copying Heinz, I stated the following: "This is money that is owed to me, which I was told would be paid to me, and to not pay it is a violation of the PA Wage Payment and Collection Law. Demand is made under that law, via this email, to pay the money to me immediately. To not pay me the money because I filed a sex discrimination claim with the Pennsylvania Human Relations Commission is unlawful retaliation."

[34]     On October 28, 2020, in a response email from Giordano, he stated the following: "[W]e sent your email to our attorney Melissa Atkins. She will be in touch with your attorney."

[35]     Respondent failed to pay me fees that I am owed because of my sex and/or my sex discrimination complaints.

[36]     Respondent's sex discriminatory and retaliatory comments and conduct toward me have caused me emotional distress.

[37]     Respondent's comments and conduct evidence a bias against female employees and/or employees who engage in protected activity.

**B.**  Based on the aforementioned, I allege that Respondent has discriminated against me because of my sex (female) and retaliated against me because of my sex discrimination complaints, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, *et seq.* ("PHRA"), and the Philadelphia Fair Practices Ordinance, Phila. Code § 9-1101, *et seq.* ("PFPO").

4.     The allegations in Paragraph 3 hereof constitute unlawful discriminatory and retaliatory practices in violation of:

   **X**       **Pennsylvania Human Relations Act (Act of October 27, 1955, P.L. 744, as amended) Section 5 Subsection(s):  (a); (d)**

   _____       Section 5.1 Subsection(s) _____

   _____       Section 5.2 Subsection(s) _____

   _____       Pennsylvania Fair Educational Opportunities Act (Act of July 17, 1961, P.L. 766, as amended) Section 4 Subsection(s) _____

5.     Other action based upon the aforesaid allegations has been instituted by the Complainant in any court or before any other commission within the Commonwealth of Pennsylvania as follows:

___X___        **This charge will be referred to the EEOC for the purpose of dual filing.**

6.      The Complainant seeks that Respondent be required to:

(a) Make the Complainant whole.

(b) Eliminate all unlawful discriminatory and retaliatory practice(s) and procedure(s).

(c) Remedy the discriminatory and retaliatory effect of past practice(s) and procedure(s).

(d) Take further affirmative action necessary and appropriate to remedy the violation complained of herein.

(e) Provide such further relief as the Commission deems necessary and appropriate.

<u>VERIFICATION</u>

    I hereby verify that the statements contained in this complaint are true and correct to the best of my knowledge, information, and belief. I understand that false statements herein are made subject to the penalties of 18 P.A.C.A. Section 4904, relating to unsworn falsification to authorities.

_____
1-7-2020
(Date Signed)

       _____
(Signature)   Maureen Cassidy

# Exhibit C

EEOC Form 161-B (11/2020)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To:  Maureen Cassidy | From:  **Philadelphia District Office**<br>**801 Market Street**<br>**Suite 1000**<br>**Philadelphia, PA 19107** |
|---|---|

☐ *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **17F-2020-61308** | **Damon A. Johnson,**<br>**State, Local & Tribal Program Manager** | **(267) 589-9722** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge.  It has been issued at your request.  Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court** <u>WITHIN 90 DAYS</u> **of your receipt of this notice**; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

[X]  More than 180 days have passed since the filing of this charge.

[ ]  Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X]  The EEOC is terminating its processing of this charge.

[ ]  The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge.  In this regard, **the paragraph marked below applies to your case:**

[ ]  The EEOC is closing your case.  Therefore, your lawsuit under the ADEA **must be filed in federal or state court** <u>WITHIN 90 DAYS</u> **of your receipt of this Notice.**  Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ]  The EEOC is continuing its handling of your ADEA case.  However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.)  EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred** <u>more than 2 years (3 years)</u> before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Enclosures(s)

**Jamie R. Williamson,**
**District Director**

January 10, 2022
*(Date Issued)*

CC:

| For Respondent:<br>**Jenna R. Mathias, Esq.**<br>**BUNKER & RAY**<br>**436 Walnut Street, WA01A**<br>**Philadelphia, PA 19106** | For Charging Party:<br>**Emily R. Derstine Friesen**<br>**Console Mattiacci Law, LLC**<br><u>derstinefriesen@consolelaw.com</u> |
|---|---|